**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

STEPHANIE LAGUERRE,

        Plaintiff,

    v.

KALAMAZOO COUNTY
HEALTH AND COMMUNITY
SERVICES DEPARTMENT,

        Defendant.
_____/

Case No. _____

Hon.

**COMPLAINT AND JURY DEMAND**

PLAINTIFF STEPHANIE LAGUERRE, by and through counsel, for her Complaint and demand for trial by jury against Defendant Kalamazoo County Health and Community Services Department, states as follows:

**JURY DEMAND**

PLAINTIFF STEPHANIE LAGUERRE demands trial by jury.

**JURISDICTION AND VENUE**

1.    This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under federal law, including Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act.

1

2.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the unlawful employment practices complained of herein occurred within the Western District of Michigan, and Defendant conducts business within this District.

3.      Plaintiff has satisfied, or will satisfy prior to filing suit, all administrative prerequisites required to pursue her federal claims, including the filing of a charge of discrimination with the Equal Employment Opportunity Commission and/or the Michigan Department of Civil Rights and receipt of a Notice of Right to Sue.

4.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims arise out of the same nucleus of operative facts as Plaintiff's federal claims and form part of the same case or controversy under Article III of the United States Constitution.

## **PARTIES**

5.      Plaintiff Stephanie Laguerre is an individual residing in the State of Michigan.

6.      Defendant Kalamazoo County Health and Community Services Department is a governmental entity and/or employer within the meaning of Title VII and the ADA.

7.      At all relevant times, Defendant employed Plaintiff and exercised control over the terms and conditions of her employment.

2

## STATEMENT OF FACTS

8.     Plaintiff began employment with Defendant on or about September 9, 2024, as a Community Educator in the Healthy Babies, Healthy Start Program within the Maternal Child Health Division.

9.     Plaintiff's direct supervisor was Isabela Robinson.

10.    On September 11, 2024, only two days after beginning employment, Plaintiff suffered a miscarriage while approximately ten weeks pregnant.

11.    Plaintiff immediately informed her supervisor of the miscarriage.

12.    Plaintiff's supervisor sent her home and submitted a special unpaid leave request because Plaintiff had not yet accrued paid time off.

13.    Plaintiff returned to work on or about October 14, 2024.

14.    Upon her return, Defendant failed to provide Plaintiff with any meaningful support, transition plan, or accommodations related to her recent miscarriage and emotional recovery.

15.    Defendant did not inquire about Plaintiff's well-being or discuss any measures that could ease her transition back into work.

16.    Instead, Plaintiff was assigned to participate in a video production involving infant-care demonstrations and baby dolls shortly after her miscarriage.

17.    Plaintiff found these assignments emotionally distressing given her recent pregnancy loss.

18.    Plaintiff reported her concerns regarding the emotional impact of these assignments, but Defendant failed to modify her duties, provide alternative work assignments, or in any way meaningfully address Plaintiff's concerns.

19.    On or about November 7, 2024, Plaintiff was required to conduct a safe sleep class despite her ongoing emotional distress following her miscarriage.

20.    Even Plaintiff's director expressed concern regarding Plaintiff being assigned such duties so soon after her pregnancy loss.

21.    Defendant nevertheless continued assigning Plaintiff emotionally triggering duties associated with infant care and pregnancy-related programming.

22.    On or about December 14, 2024, Plaintiff learned she was pregnant again.

23.    On January 21, 2025, Plaintiff suffered a second miscarriage while at work.

24.    On January 22, 2025, Plaintiff informed her supervisor of the miscarriage and requested permission to work remotely pending a scheduled medical procedure related to the miscarriage.

25.    Plaintiff's supervisor instructed Plaintiff to submit a formal request for remote work.

26.    Plaintiff complied and submitted a request to work remotely.

27.    Defendant, through Human Resources and supervisory personnel, informed Plaintiff that her only options were unpaid leave or returning to work in person.

28.    Plaintiff subsequently underwent a dilation and curettage procedure on or about January 26, 2025.

29.    Following the procedure, Plaintiff again requested permission to work remotely while recovering physically and emotionally.

30.    Defendant approved approximately forty hours of bereavement leave but failed to meaningfully address Plaintiff's accommodation request.

31.    Plaintiff's supervisor informed Plaintiff that remote work was not an option because of the nature of her position.

32.    Plaintiff informed Defendant that many of her job duties, including educational programming, communications, documentation, administrative tasks, and related work, could be performed remotely.

33.    Plaintiff provided information and examples demonstrating that her work responsibilities were compatible with remote work.

34.    Despite this information, Defendant repeatedly denied Plaintiff's requests without conducting an individualized assessment or engaging in a good-faith interactive process.

35.    During discussions concerning Plaintiff's accommodation requests, Plaintiff's supervisor referenced a prior issue involving communication availability that had already been resolved, contributing to an intimidating and hostile environment.

36.    On February 14, 2025, Plaintiff submitted a formal request for reasonable accommodation.

37.    By February 20, 2025, Defendant had failed to meaningfully respond to Plaintiff's accommodation request.

38.    When Plaintiff followed up, Defendant again denied the request based upon generalized assertions regarding the nature of her work rather than any individualized analysis.

39.    Defendant failed to engage in the interactive process in good faith.

40.    Defendant failed to reasonably accommodate Plaintiff's medical condition, pregnancy-related limitations, and emotional recovery.

41.    As a direct result of Defendant's conduct, Plaintiff experienced significant emotional distress, anxiety, humiliation, and deterioration of her mental well-being.

42.    Defendant's conduct created working conditions so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign.

43.    Accordingly, Plaintiff resigned effective February 21, 2025.

44.    Plaintiff suffered loss of wages, loss of employment benefits, emotional distress, humiliation, embarrassment, mental anguish, and other damages as a direct and proximate result of Defendant's unlawful conduct.

## COUNT I
## PREGNANCY DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, *et seq.* ("TITLE VII") (pregnancy/sex/gender discrimination) and THE PREGNANCY DISCRIMINATION ACT OF 1978, 42 U.S.C. § 2000e(k) ("PDA")

45.    Plaintiff incorporates by reference the preceding paragraphs as though fully stated herein.

46.    Plaintiff suffered physical and mental impairments related to her miscarriages, recovery, and associated medical treatment.

47.    Plaintiff was qualified to perform the essential functions of her position with or without reasonable accommodation.

48.    Plaintiff requested reasonable accommodations, including temporary remote work during her recovery period.

49.    Defendant failed and refused to provide reasonable accommodations.

50.    Defendant failed to engage in a good-faith interactive process.

51.    Defendant denied Plaintiff's accommodation requests without individualized assessment.

52.    Defendant's conduct violated Title VII and the PDA.

53.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages.

7

## COUNT II
## DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. §12101 et seq.  ("ADA") and THE PREGNANT WORKERS FAIRNESS ACT, 42 U.S.C. 2000gg ("PWFA")

54.     Plaintiff incorporates by reference the preceding paragraphs as though fully stated herein.

55.     Plaintiff suffered physical and mental impairments related to her miscarriages, recovery, and associated medical treatment.

56.     Plaintiff was qualified to perform the essential functions of her position with or without reasonable accommodation.

57.     Plaintiff requested reasonable accommodations, including temporary remote work during her recovery period.

58.     Defendant failed and refused to provide reasonable accommodations.

59.     Defendant failed to engage in a good-faith interactive process.

60.     Defendant denied Plaintiff's accommodation requests without individualized assessment.

61.     Defendant's conduct violated the ADA and the PWFA.

62.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages.

8

## COUNT III
## RETALIATION IN VIOLATION OF TITLE VII AND THE ADA

63.     Plaintiff incorporates by reference the preceding paragraphs as though fully stated herein.

64.     Plaintiff engaged in protected activity by requesting accommodations and opposing discriminatory treatment.

65.     Following Plaintiff's protected activity, Defendant subjected Plaintiff to hostility, dismissive treatment, and continued denials of accommodation.

66.     Defendant's conduct would dissuade a reasonable employee from engaging in protected activity.

67.     Defendant retaliated against Plaintiff because she requested accommodations and asserted rights protected by federal law.

68.     As a direct and proximate result of Defendant's retaliation, Plaintiff suffered damages.

## COUNT IV
## HOSTILE WORK ENVIRONMENT

69.     Plaintiff incorporates by reference the preceding paragraphs as though fully stated herein.

70.     Defendant subjected Plaintiff to unwelcome conduct based upon her pregnancy, pregnancy-related medical conditions, and disabilities.

9

71.    The conduct included emotionally triggering assignments immediately following miscarriage, refusal to accommodate, dismissive responses to Plaintiff's medical needs, intimidation during accommodation discussions, and repeated disregard for Plaintiff's emotional and physical condition.

72.    The conduct was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive working environment.

73.    Defendant knew or should have known about the hostile environment and failed to take prompt and appropriate corrective action.

74.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages.

**COUNT V**
**VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 *et seq.* ("ELCRA") (Pregnancy/Sex/ Gender Discrimination)**

75.    Plaintiff incorporates by reference the preceding paragraphs as though fully stated herein.

76.    At all relevant times, Defendant was an employer within the meaning of the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2201(a).

77.    Plaintiff is a member of protected classes based upon her sex, pregnancy, and pregnancy-related medical conditions.

78.    Pregnancy, miscarriage, and related medical conditions constitute protected characteristics under ELCRA.

79.    Plaintiff was qualified for her position and performed her job duties satisfactorily.

80.    Defendant discriminated against Plaintiff with respect to the terms, conditions, and privileges of employment because of her pregnancy and pregnancy-related conditions.

81.    Defendant subjected Plaintiff to disparate treatment, including denying accommodations, assigning emotionally distressing infant- and pregnancy-related tasks immediately following miscarriage, disregarding Plaintiff's physical and emotional condition, and refusing to meaningfully support Plaintiff during recovery from repeated pregnancy loss.

82.    Defendant's conduct adversely affected Plaintiff's employment and working conditions.

83.    Defendant's discriminatory treatment culminated in Plaintiff's constructive discharge.

84.    As a direct and proximate result of Defendant's violations of ELCRA, Plaintiff suffered damages including lost wages, emotional distress, humiliation, embarrassment, mental anguish, and loss of professional reputation.

## COUNT VI
## RETALIATION IN VIOLATION OF THE ELCRA

85.    Plaintiff incorporates by reference the preceding paragraphs as though fully stated herein.

11

86.    Plaintiff engaged in protected activity under ELCRA by opposing

discriminatory treatment and requesting accommodations related to her pregnancy-

related medical conditions.

87.    Defendant knew Plaintiff engaged in protected activity.

88.    Following Plaintiff's protected activity, Defendant subjected Plaintiff to

hostility, dismissive treatment, refusal to accommodate, and continued adverse

treatment.

89.    Defendant retaliated against Plaintiff because she opposed unlawful

discrimination and asserted rights protected under ELCRA.

90.    Defendant's retaliatory conduct materially affected the terms and conditions

of Plaintiff's employment and contributed to her constructive discharge.

91.    As a direct and proximate result of Defendant's retaliation, Plaintiff suffered

damages.

### COUNT VIII
### DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE IN VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT, MCL 37.1101 *et seq.* ("PWDCRA")

92.     Plaintiff incorporates by reference the preceding paragraphs as though fully

stated herein.

93.    Plaintiff suffered from determinable physical and mental characteristics

related to her miscarriages, medical treatment, recovery, and associated emotional

conditions.

12

94. Plaintiff's conditions constituted disabilities or perceived disabilities within the meaning of the PWDCRA.

95. Plaintiff was otherwise qualified to perform the duties of her position with or without reasonable accommodation.

96. Plaintiff requested reasonable accommodations, including temporary remote work while recovering from miscarriage-related medical treatment and complications.

97. Defendant failed and refused to provide reasonable accommodations.

98. Defendant failed to engage in a meaningful interactive process or conduct an individualized assessment regarding Plaintiff's accommodation requests.

99. Defendant denied Plaintiff accommodations based upon generalized assumptions rather than an individualized evaluation of Plaintiff's ability to perform her job duties remotely.

100. Defendant discriminated against Plaintiff because of her disability and/or perceived disability in violation of the PWDCRA.

101. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages.

## COUNT IX
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF ELCRA AND THE PWDCRA

102. Plaintiff incorporates by reference the preceding paragraphs as though fully stated herein.

103. Plaintiff was subjected to unwelcome conduct based upon her sex, pregnancy, pregnancy-related conditions, and related medical circumstances.

104. The conduct included assigning emotionally triggering infant-care duties immediately following miscarriage, repeated denial of accommodations, dismissive treatment regarding Plaintiff's medical condition, intimidation during accommodation discussions, and disregard for Plaintiff's emotional and physical well-being.

105. The discriminatory conduct was severe and/or pervasive and substantially interfered with Plaintiff's employment and created an intimidating, hostile, offensive, and abusive work environment.

106. Defendant, through its supervisors and agents, knew or should have known of the hostile work environment.

107. Defendant failed to take prompt and appropriate remedial action.

108. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages.

## DAMAGES

109.   As a direct and proximate result of Defendant's unlawful conduct, Plaintiff

has suffered and continues to suffer damages including:

> A. Past and future lost wages and benefits;
> B. Front pay and/or reinstatement;
> C. Emotional distress;
> D. Mental Anguish;
> E. Humiliation and embarrassment damages;
> F. Loss of professional standing;
> F. Medical and related expenses;
> G. Attorneys' fees, costs, and interest; and
> H. All other compensatory and equitable relief permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF, STEPHANIE LAGUERRE, respectfully

requests that this Court enter judgment in her favor and against Defendant and

award:

> A. Back pay, front pay, and lost employment benefits;
> B. Compensatory damages;
> C. Emotional distress damages;
> D. Attorney fees and costs pursuant to applicable law;
> E. Pre-judgment and post-judgment interest;
> F. Equitable and injunctive relief as appropriate; and
> G. Any other relief this Court deems just and proper.

Respectfully Submitted,

Dated:  May 12, 2026

CARLA D. AIKENS, P.L.C.

/s/ *Connor B. Gallagher*
Connor B. Gallagher (P82104)
*Attorneys for Plaintiff*
615 Griswold St., Ste. 709
Detroit, MI 48226
connor@aikenslawfirm.com

16